1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBRA S. O'NEAL, | NO. C23-0232-KKE |
| Plaintiff(s), | ORDER ON DEFENDANT'S POST-TRIAL MOTIONS |
| v. | |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendant(s). | |

Plaintiff Debra O'Neal sued Defendant State Farm Fire and Casualty company under the Washington Insurance Fair Conduct Act ("IFCA") for its handling and denial of her claim for coverage of personal property allegedly stolen from a storage facility. *See* Dkt. No. 1-1. The Court held a jury trial, and the jury returned a verdict for O'Neal. Dkt. No. 158.

State Farm now renews its motion for judgment as a matter of law under Rule 50(b) (Dkt. No. 169), and in the alternative, moves for a new trial under Rule 59 (Dkt. No. 171). State Farm argues that the jury's verdict should be set aside because (1) O'Neal provided insufficient evidence showing that her property was stolen, and thus, that her claim was covered by State Farm's policy; (2) improper testimony prejudiced the jury against State Farm; (3) the Court incorrectly allowed the jury to consider enhanced damages under IFCA; and (4) the jury's verdict goes against the weight of the evidence. For the reasons below, the Court denies both motions.

ORDER ON DEFENDANT'S POST-TRIAL MOTIONS - 1

## I.    BACKGROUND

The Court conducted a jury trial in this case from October 28, 2024 to November 4, 2024, on O'Neal's single IFCA claim against State Farm.  *See* Dkt. Nos. 136, 139, 141, 145, 151, 155. The jury returned a verdict for O'Neal, finding that State Farm violated IFCA by unreasonably denying her claim.  Dkt. No. 158.  The jury awarded her $107,087.22 in total damages, comprised of (1) $53,543.61 in adjusted actual damages after a 50% reduction for failure to mitigate and (2) $53,543.61 in enhanced damages.  *Id.* at 3.

At trial, O'Neal argued that State Farm unreasonably denied coverage on her purportedly stolen property that was held in storage.  Dkt. No. 192 at 111–22.  O'Neal insured her property through a State Farm policy and had, at all relevant times, made insurance payments to State Farm for that policy.  Dkt. No. 134 at 5.  O'Neal's insurance policy covered "attempted theft and loss of property from a known location when it is probable that the property has been stolen."  Ex. 43 at 153.[1]  To obtain coverage for her stolen property, O'Neal's policy required her to provide State Farm immediate notice of the theft, notify the police, prepare an inventory of the stolen property, and provide other requested records and documents supporting proof of the loss.  *Id.*  The facts established at trial are as follows.

Around December 22, 2004, O'Neal placed a large collection of personal property into storage with All My Sons Moving and Storage, Inc. ("All My Sons").  Dkt. No. 134 at 5.   O'Neal testified that this property was packed into four large shipping containers and consisted of furniture, clothing, keepsakes, and other items.  Dkt. No. 192 at 138, Dkt. No. 193 at 65. O'Neal testified that after moving the property into storage in December 2004, she never accessed, added, nor withdrew any items.  Dkt. No. 134 at 5.  All My Sons later notified O'Neal by email that they

---

[1] This order cites exhibits that were admitted in evidence during the jury trial.

planned to move her property to another storage facility.  Dkt. No. 192 at 192–93.  On March 17, 2009, All My Sons transferred O'Neal's property to Friends & Family Moving & Storage ("Friends & Family").  *Id.* at 192 (referencing Ex. 43).  Around July to September 2015, O'Neal moved from Seattle, Washington, to the Los Angeles metro area in California.  Dkt. No. 134 at 5.

O'Neal testified that she remained in contact with a Friends & Family representative, Glen Abbott, from 2009 to 2017, and that she continued making payments for her storage to Friends & Family until around March 2020.  Dkt. No. 192 at 194, 197–199.  As proof of her payments, she submitted records from her credit union account.  *Id.* at 197.  At trial, she also testified that while she was in California, she had continued to make payments to Friends & Family via money orders that she paid for with cash.  Dkt. No. 193 at 144–45.  The jury also heard two voicemails left by Glen Abbott on O'Neal's phone in 2017, notifying O'Neal that Friends & Family planned on moving her property to another location, which she agreed to, and that she had to take no action. Dkt. No. 192 at 196 (referencing Ex. 1).

In 2019, O'Neal returned to Washington and attempted to contact Friends & Family about her property.  Dkt. No. 192 at 200 (referencing Ex. 7).  She sent certified letters and made phone calls to Friends & Family, but received no response.  *Id.* at 201–02.  In March 2020, O'Neal attempted to visit various Friends & Family locations, but was unable to make contact with any company representative.  *Id.* at 204.

O'Neal testified that she called State Farm on March 12, 2020, notifying State Farm that she believed her property had been stolen and that she needed to file a claim.  Dkt. No. 193 at 155, Dkt. No. 192 at 205.  State Farm advised O'Neal that her policy required her to file a police report in the event of a theft.  Ex. 43 at 299.  O'Neal explained that she had immediately contacted the police after discovering the loss, but was directed by the police department to obtain an attorney to prove a theft occurred.  *Id.*; Dkt. No. 192 at 205.  State Farm did not treat the March 12, 2020

call as a request from O'Neal to file a claim. Dkt. No. 193 at 170. By contrast, O'Neal testified that she believed she had initiated a claim with State Farm by virtue of this conversation. Dkt. No. 193 at 29 ("I told her that I wanted to place a claim, and as far as I know, it was placed."). State Farm did not follow up with O'Neal after this phone call. *Id.* at 166–67.

After hearing nothing from State Farm for several months, O'Neal then sent a letter to State Farm, which they received on August 3, 2020. Dkt. No. 193 at 169–70. State Farm considered this letter as O'Neal's initial claim filing and opened a claim for the missing personal property. *Id.* Throughout August to October 2020, State Farm texted and left voicemails for O'Neal about her claim, but she did not respond. Ex. 43 at 40–44. On October 9, 2020, State Farm notified O'Neal that it would close her claim due to lack of response. *Id.* at 42. She then contacted State Farm later that day to indicate that she wanted to proceed with the claim. *Id.* at 286. The same month, she notified State Farm that she had obtained legal representation, and State Farm began communicating with O'Neal through her attorney. *Id.* From October 2020 to September 2021, State Farm requested additional information and documents from O'Neal, including a copy of her storage rental agreement with Friends & Family and a copy of a police report filed for the loss. *Id.* at 20–41, 303.

State Farm also investigated Friends & Family as well as O'Neal herself. Ex. 43 at 26. State Farm's investigation showed that Friends & Family was a delinquent corporation per Washington Secretary of State records, and the location of the storage facility where O'Neal's belongings were supposed to have been secured was a single-family residence, not a storage facility or warehouse. *Id.* The results of State Farm's investigation were included in O'Neal's claim file. *See id.*

On May 12, 2021, O'Neal filed a police report online. Ex. 40; Dkt. No. 192 at 129. O'Neal later testified that the value of her property was incorrectly listed on the police report. Dkt. No. 193 at 26.

O'Neal testified that, aside from filing a police report, State Farm directed her to sue Friends & Family in order to obtain coverage. Dkt. No. 193 at 37–38. On August 12, 2021, O'Neal filed suit against Friends & Family in Washington state court for breach of contract, UCC violations, and conversion. Ex. 35. The state court later entered default judgment against Friends & Family, awarding O'Neal $90,500.36 in damages. *Id.* In September 2021, O'Neal provided State Farm with a copy of the lawsuit against Friends & Family, which included the police report and an inventory of her property. Ex. 43 at 231, 363–65. O'Neal's claim file also included her credit union statements showing payments made to Friends & Family, as well as certified letters that the storage company never responded to. *Id.* at 321–31, 348–60.

On November 15, 2021, State Farm sent O'Neal a letter denying her coverage under the policy. Ex. 43 at 152. In its denial letter, State Farm cited O'Neal's policy, and noted that while the certified letters show that O'Neal first attempted to contact Friends & Family in July 2019, the last recorded payment she made to the company was in September 2016. *Id.* State Farm stated that as a result, there was no evidence to show that her property was stolen. *Id.*

## II.  LEGAL STANDARDS

### A.  Judgment as a Matter of Law

In deciding a renewed motion for judgment as a matter of law, the Court considers "whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). The Court views the evidence in the light most favorable to the nonmoving party—here, O'Neal—and draws all reasonable inferences in her favor. *MKB Constructors v. Am. Zurich Ins. Co.*, 711 F. App'x 834, 836 (9th

Cir. 2017).  "[I]n entertaining a motion for judgment as a matter of law, the court ... may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  The Court will uphold the jury's verdict if it is supported by substantial evidence.  *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 476 (9th Cir. 2021). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1000 (9th Cir. 2008) (quoting *Syufy Enter. v. Am. Multicinema, Inc.*, 793 F.2d 990, 992 (9th Cir. 1986)).

**B.    New Trial**

Under Rule 59, "[t]he court may, on motion, grant a new trial on all or some of the issues … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1).  A motion for new trial is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014).  Because "Rule 59 does not specify the grounds on which a motion for new trial may be granted[,]" the Court is "bound by those grounds that have been historically recognized." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).  Those historically recognized grounds include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Id.*

Unlike with a Rule 50 decision, in considering a motion for new trial, the Court does not view the trial evidence in the light most favorable to the verdict and nonmoving party. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014).  Additionally, the Court can weigh the evidence, make credibility assessments, and raise *sua sponte* its own concerns about the damages verdict. *Id.*  That said, the Court cannot grant a motion for new trial simply

because it would have arrived at a different verdict. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). The Court applies a "stringent standard" and only grants a new trial if "it is quite clear that the jury has reached a seriously erroneous result." *Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984).

## III.   ANALYSIS

**A.    The Court Grants in Part and Denies in Part State Farm's Motion to Strike O'Neal's Responses and Supporting Declaration.**

In State Farm's replies supporting its post-trial motions, State Farm moved to strike O'Neal's response briefs and supporting declaration. Dkt. No. 185 at 2, Dkt. No. 187 at 2. State Farm asserts that these filings should be stricken as untimely, and that the declaration of O'Neal's counsel improperly includes hearsay and argument. Dkt. No. 187 at 2.

O'Neal's responses to State Farm's post-trial motions are indeed untimely. State Farm filed its Rule 50 and Rule 59 motions on December 2, 2024. Dkt. Nos. 169, 171. The Local Rules required O'Neal to file any opposition papers no later than 15 days after the filing date of the motions. Local Rules W.D. Wash. LCR 7(d)(3). O'Neal responded to State Farm's post-trial motions a day late. *See* Dkt. Nos. 182, 183 (filed on December 18, 2024). O'Neal did not provide any reason for the untimely filing, nor did she seek an extension of time to file.

While the Court disapproves of O'Neal's failure to comply with the local rules, it will nonetheless consider her untimely briefs. Courts typically disfavor motions to strike and usually deny such requests "unless the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties." *Johnson v. U.S. Bancorp*, No. C11-02010 RAJ, 2012 WL 6615507, at *8 (W.D. Wash. Dec. 18, 2012) (citation and internal quotation marks omitted). And even if a submission is late, the Court has discretion to consider untimely responses. *Hahn v. Waddington*, 782 F. App'x 607, 609 (9th Cir. 2019); *Protingent, Inc. v. Gustafson-Feis*, No. C20-

1551-KKE, 2023 WL 8089169, at *1 (W.D. Wash. Nov. 21, 2023). Here, O'Neal was late by a single day, and the prejudice to State Farm is slight since it had the opportunity to reply to both O'Neal's briefs. The Court also considers the dispositive nature of the pending motions, and emphasizes its strong preference for deciding motions on the merits. Therefore, the Court will not strike O'Neal's response briefs to State Farm's post-trial motions.

However, the Court agrees that O'Neal's supporting declaration is improper because it includes hearsay statements and arguments. *See* Dkt. No. 181. O'Neal may not use declarations to skirt the Court's page and word limits for briefs. LCR 7(e)(4). As such, the Court grants in part and denies in part State Farm's motion to strike. O'Neal's counsel's declaration is stricken, but the Court will consider the opposition briefs to State Farm's motions.

**B.    The Court Denies State Farm's Motion for Judgment as a Matter of Law.**

    1.    <u>Coverage under the policy is not dispositive of whether State Farm reasonably denied O'Neal's claim.</u>

State Farm argues that O'Neal presented insufficient evidence to prove that she lost her property due to "theft with criminal intent" such that her loss was covered under the policy. Dkt. No. 169 at 1–2. According to State Farm, "without evidence of theft with criminal intent, there can be no coverage under [State Farm's] policy [and] [w]ithout coverage, there can be no unreasonable denial under IFCA." *Id.* at 2, 11–13.

State Farm misstates the law. As courts in this district have previously held, "[t]here is an abundance of case law that an insurance company can be held liable for bad faith and unreasonable conduct in the investigation and denial of a claim even where it ultimately turns out that there was no coverage." *Wall v. Country Mut. Ins. Co.*, 319 F. Supp. 3d 1227, 1233 (W.D. Wash. 2018) (denying summary judgment on IFCA claim); *see also Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship*, 106 F.3d 1465, 1470 (9th Cir. 1997) (upholding jury's finding of bad faith where neither

party was able to conclusively prove the cause of a vessel's sinking); *Young v. Safeco Ins. Co. of Am.*, No. 20-CV-01816-LK, 2022 WL 4017893, at *13 (W.D. Wash. Sept. 2, 2022) ("The jury could find that the tenant's alterations are excluded under the Policy (and therefore find no breach of contract) … but nonetheless determine that Safeco acted unreasonably by premising its denial on a misapplication of vandalism."). In other words, whether the coverage decision is correct is not dispositive here. *See Wall*, 319 F. Supp. 3d at 1233; *Bryant v. Country Life Ins. Co.*, 414 F. Supp. 2d 981, 1000 (W.D. Wash. 2006) (finding that the dispositive issue in a bad faith claim is whether defendant failed to conduct a reasonable investigation of the claim, not whether the coverage decision was ultimately correct). Washington state courts have held the same. *Cumming v. United Servs. Auto. Ass'n*, No. 52913-1-II, 2020 WL 7233162, at *14–15 (Wash. Ct. App. 2020) (unpublished) (reversing dismissal of IFCA, bad faith, and CPA claims and noting that whether the coverage decision was correct is not determinative as to whether the basis for denial was reasonable).

For this reason, State Farm is incorrect that O'Neal must "meet the high burden of establishing 'theft with criminal intent'" to succeed on her IFCA claim. Dkt. No. 169 at 4. To the contrary, O'Neal did not need to conclusively prove theft with criminal intent to the jury. *See Fireman's Fund*, 106 F.3d at 1470 ("Washington law permits a jury to find denial of coverage to be in bad faith even when the cause of loss is unclear."). At the Court's direction, the key inquiry the jury considered was whether State Farm unreasonably denied O'Neal's claim. Dkt. No. 153 at 4, Dkt. No. 158 at 1. While the jury may have concluded that O'Neal established her property was probably stolen and therefore covered by the policy, the jury could have also properly found that O'Neal's loss was not covered by the policy, but nonetheless, that State Farm violated IFCA by failing to properly investigate O'Neal's claim and unreasonably denying her request for coverage or benefits as a result. *Wall*, 319 F. Supp. 3d at 1233; *Cumming*, 2020 WL 7233162, at

1    *14 (recognizing that while not all Washington Administrative Code ("WAC") violations are
2    actionable under IFCA, refusing to pay a claim without conducting a reasonable investigation may
3    establish an IFCA claim).

4        State Farm does not address *Wall* or the other significant authority cited above undermining
5    its position.  Rather, State Farm relies only on *Cochrane v. American Guarantee & Liability*
6    *Insurance Co.*, 471 F. Supp. 3d 1140 (W.D. Wash. 2020) for the proposition that "IFCA does not
7    create an independent cause of action for [enumerated] regulatory violations absent an underlying
8    unreasonable denial of coverage or benefits."  Dkt. No. 169 at 12 (quoting *Cochrane*, 471 F. Supp.
9    3d at 1153–54).  The Court agrees that WAC violations alone are inadequate to establish an IFCA
10   violation.  But the court in *Cochrane* did not hold that plaintiffs must show that their insurance
11   claim is definitively covered in order to state an IFCA claim.  *See Cochrane*, 471 F. Supp. 3d at
12   1154 (granting summary judgment where plaintiff premised her IFCA claim on an insurer's failure
13   to respond to her IFCA notice but could not establish that an unreasonable denial occurred).

14       The Court is also not convinced that IFCA's plain language precludes liability for an
15   inadequate investigation that results in an unreasonable denial of coverage.  *See* Dkt. No. 187 at 6.
16   In *Perez-Crisantos v. State Farm Fire & Casualty Co.*, the Washington Supreme Court held that
17   a violation of the WAC does not always give rise to a private cause of action under IFCA.  389
18   P.3d 476, 483 (Wash. 2017).  However, the Washington Supreme Court also specifically noted
19   that certain regulatory violations, such as a failure to conduct a reasonable investigation before
20   denying a claim, could be actionable under IFCA if the defective investigation constituted an
21   unreasonable denial of coverage.  *Id.* at 480 (citing WASH. ADMIN. CODE § 284–30–330(4)
22   (declaring "[r]efusing to pay claims without conducting a reasonable investigation" unfair)); *see*
23   *also Santiago v. GEICO Advantage Ins. Co.*, No. C22-1370RSL, 2023 WL 5802523, at *3 (W.D.
24   Wash. Sept. 7, 2023) ("[W]here the insurer's valuation of plaintiff's claims ignored relevant

1   information and instead appears to have relied on some sort of bare proportionality analysis, there

2   is at least an inference that [the insurer's] investigation and/or valuation was unreasonable.").

3          In sum, O'Neal's alleged failure to definitively prove her that her property was stolen is

4   insufficient to overcome the jury's verdict.

5          2.   <u>Substantial evidence supports the jury's verdict.</u>

6          Viewing the evidence in the light most favorable to O'Neal, the Court finds that the jury's

7   verdict is supported by substantial evidence.  During trial, State Farm argued that its investigation

8   was reasonable because O'Neal did not provide records reflecting her monthly payments to Friends

9   & Family after September 2016.  Under State Farm's theory, O'Neal defaulted on her payments

10  to the storage company and abandoned her personal property.  But the absence of payment records

11  corroborating O'Neal's testimony is insufficient to set aside the jury's verdict.

12         O'Neal testified that she consistently and timely paid Family & Friends, via money orders

13  and checks from her credit union, for storage services from September 2016 until March 2020,

14  though she neglected to keep records of these transactions.  Dkt. No. 193 at 21, 66; Ex. 64.  The

15  jury could have reasonably found her testimony credible based on evidence of her prior payments

16  to Friends & Family for which she was able to produce records, as well as her prior payments to

17  other storage facilities and the payment of her insurance premiums to State Farm itself.  "The Court

18  must accept the jury's credibility findings consistent with the verdict, and it may not substitute its

19  view of the evidence for that of the jury."  *IDS Prop. & Cas. Ins. Co. v. Fellows*, C15-2031 TSZ,

20  2017 WL 2600186, at *3 (June 15, 2017) (citing *Winarto v. Toshiba Am. Elecs. Components, Inc.*,

21  274 F.3d 1276, 1283 (9th Cir. 2001)).

22         Likewise, the jury could have reasonably found Mr. Worth, O'Neal's insurance expert,

23  credible.  Mr. Worth opined on several deficiencies in State Farm's handling of O'Neal's claim.

24  For instance, Mr. Worth concluded that State Farm failed to make "good-faith attempts" to

communicate with and investigate her claim. Dkt. No. 194 at 169–70. Mr. Worth cited the five-month delay after O'Neal's March 2020 initial phone call to State Farm, where State Farm did not confirm whether O'Neal understood her obligations under her policy and how to fulfill those obligations to ensure coverage, including how to file a police report. Dkt. No. 194 at 171. According to Mr. Worth, State Farm's poor communication with O'Neal impacted its ability to create a clear claim file on which to render a fair coverage decision. *Id.* at 85.

Mr. Worth also opined that State Farm "failed to give every benefit of the doubt to the insured." Dkt. No. 194 at 83. Based on the record, the jury could have reasonably concluded that State Farm failed to do so because it did not thoroughly investigate Friends & Family, and its owner John Muse. During the claims processing period, State Farm found information showing that Friends & Family held a delinquent status with the Washington Secretary of State, which supported O'Neal's assertions that the company was unresponsive to her letters and phone calls. Ex. 43 at 26. However, Mr. Worth opined that, despite this information, State Farm did not investigate further into Friends & Family or John Muse before denying O'Neal's claim. Dkt. No. 194 at 116. In totality, this evidence is sufficient to support the jury's finding that State Farm's denial of coverage violated IFCA.

State Farm contends that the fact that the jury reduced O'Neal's damages by 50% establishes that State Farm's investigation was reasonable. Dkt. No. 187 at 6. State Farm cites no authority for this proposition. Rather, the fact that the jury accounted for O'Neal's failure to mitigate shows that the jury considered the totality of the circumstances—what information O'Neal failed to submit to State Farm during the claims process, and what information she did. The jury's finding that O'Neal failed to mitigate her own harm does not necessitate a verdict for State Farm. Based on the efforts O'Neal did make to obtain coverage, the jury could rationally find that State Farm unreasonably denied her claim.

1    Ultimately, viewing the evidence in the light most favorable to non-movant O'Neal, the

2    Court cannot conclude that State Farm's investigation and subsequent denial were reasonable as a

3    matter of law.  As such, because substantial evidence supports the jury's verdict in O'Neal's favor,

4    the Court denies State Farm's Rule 50(b) motion.

5    **C.    The Court Denies State Farm's Motion for New Trial.**

6        State Farm asserts three grounds for a mistrial: (1) O'Neal's counsel and witnesses

7    improperly inserted evidence about Friends & Family owner John Muse, which prejudiced the jury

8    against State Farm; (2) the Court erroneously allowed the jury to consider and award enhanced

9    damages under IFCA; and (3) the verdict is unsupported by the evidence.  Dkt. No. 171 at 9, 11,

10   12.

11       None of these arguments are persuasive.  The Court will address each argument in turn.

12       1.   Attorney misconduct does not warrant a new trial.

13       To obtain a new trial on the basis of attorney misconduct, State Farm must show that

14   "opposing counsel's actions were intentionally improper and that the 'flavor of misconduct

15   sufficiently permeate[d] an entire proceeding to provide conviction that the jury was influenced

16   by passion and prejudice in reaching its verdict.'"  *Langley v. Colegio*, 854 F. App'x 149, 152 (9th

17   Cir. 2021) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002)).  To

18   evaluate the potential prejudice from such comments, courts examine "the totality of

19   circumstances, including the nature of the comments, their frequency, their possible relevancy to

20   the real issues before the jury, the manner in which the parties and the court treated the comments,

21   the strength of the case, and the verdict itself."  *Inland Empire Waterkeeper v. Corona Clay Co.*,

22   No. 8:18-CV-00333-DOC-DFM, 2024 WL 4492293, at *7 (C.D. Cal. Sept. 16, 2024).  State Farm

23   has failed to show that improper attorney commentary and witness testimony about John Muse

24   prejudiced the jury; thus, a new trial is unwarranted.

According to State Farm, O'Neal's counsel and witnesses improperly introduced testimony regarding John Muse's character and criminal history,[2] thus prejudicing the jury against State Farm.  State Farm cites several statements it claims created unfair prejudice.  For example, State Farm relies on references O'Neal's counsel made to John Muse's criminality during the opening and closing arguments.  Dkt. No. 192 at 114 ("[T]hey did nothing to follow up to investigate the theft, despite there being multiple files of theft against the same storage company, Friends & Family Storage and the owner, John Muse."), Dkt. No. 196 at 130 ("They ignored the fact that [Mr.] Muse was a felon, ignored John Muse about—and Friends & Family avoiding service eight times, even after they knew about it.").

During O'Neal's direct examination, her counsel questioned her about the default judgment she obtained against Friends & Family, which was an admitted exhibit.  Dkt. No. 193 at 44 (referring to Exhibit 34).  When the Court asked O'Neal's counsel to clarify his line of questioning, he stated, "I'm asking if Debra is aware of a finding that John Muse was convicted of felony crimes, including theft, forgery, other indications that would corroborate her allegations of theft." Dkt. No. 193 at 44.  State Farm objected, and the Court directed O'Neal's counsel to examine the witness as to her knowledge regarding the contents of the claim file.  *Id.*  During this direct examination, O'Neal described John Muse as a "thief" and stated that "he had done this to other people." *Id.* at 40–41 ("I found out that he was a forger … and he had gone to jail.").

---

[2] At several points during trial, State Farm sought to exclude reference or arguments relating to John Muse's criminal history, including a 2000 forgery conviction. Dkt. No. 194 at 25.  The Court overruled this objection as to the forgery conviction. *Id.* at 25, 26.  In a sidebar with counsel and outside of the presence of the jury, the Court noted that while such evidence might be improper character evidence under Rule 404 in another context, Mr. Muse was not a witness in the proceeding, and the reference to John Muse's forgery conviction was already included in State Farm's claims file, which was a stipulated and admitted exhibit. *Id.* at 25.  Moreover, this information was also relevant because it went to the issue of whether State Farm properly investigated O'Neal's claim. Ex. 43 at 363.  As explained below, the Court sustained State Farm's objections to references to other purported convictions that were not included in the claims file, and therefore not relevant to State Farm's investigation.

Next, State Farm asserts that during the testimony of O'Neal's insurance expert, Robert Worth, her counsel intentionally elicited testimony in violation of the Court's order on the parties' motions in limine.[3]  Dkt. No. 171 at 5.  Robert Worth testified on the police report O'Neal filed:

> **Q**: Can you tell the jury what this other police report said?
>
> **A**: Another individual that dealt with Friends & Family and Mr. Muse put property in storage with one of his locations that he had, warehouse location.  They tried to contact him.  There was a lack of response.  The claim and the property were gone, and they made a report to the police of the theft of their property that was also with Mr. Muse's Friends & Family storage facility.

Dkt. No. 171 at 5, Dkt. No. 194 at 116.  State Farm objected on the basis that this information had not been disclosed in Mr. Worth's report and moved to strike.  Dkt. No. 194 at 117.  The Court granted its motion on that basis.  *Id.*  On cross-examination, Mr. Worth referenced other instances of John Muse's alleged misconduct.  *Id.* at 181 ("Beyond this, I don't know of any other police report prepared other than the one that was similar against the same defendant, Muse …").  During the afternoon conference with counsel, the Court reaffirmed that Mr. Worth's testimony on other alleged crimes committed by John Muse had been stricken, and invited counsel to propose a limiting instruction if they believed it was necessary.  *Id.* at 214.

Lastly, State Farm argues that Timofey Samoylenko, the process server O'Neal hired to serve John Muse in a separate lawsuit against Friends & Family, improperly referenced other criminal charges against John Muse.  Dkt. No. 171 at 6.  Before Mr. Samoylenko was introduced as a witness and outside of the presence of the jury, State Farm objected to his testimony.  First, State Farm objected to O'Neal's request to submit Mr. Samoylenko as an expert witness.  Dkt. No. 194 at 13.  The Court agreed, concluding that Mr. Samoylenko was not permitted to testify as an

---

[3] State Farm did not move *in limine* to exclude references or arguments about John Muse's criminality.  Rather, it moved to exclude evidence and testimony "about conduct by State Farm in other lawsuits."  Dkt. No. 108 at 10, Dkt. No. 135 at 15.

expert because O'Neal failed to timely and properly disclose him as such. *Id.* at 18. However, the Court found that Mr. Samoylenko could properly testify as to his personal experience in attempting to serve John Muse, including about his declaration regarding his attempted service, which was included in the claims file. *Id.* at 18, 25. State Farm also objected that Mr. Samoylenko's testimony amounted to impermissible character evidence to the extent he alluded to John Muse's purported criminal background. *Id.* at 24. The Court refused to exclude Mr. Samoylenko on this basis, explaining that the exhibit containing Mr. Samoylenko's declaration (and details about Mr. Muse's background) had already been admitted into evidence without objection by State Farm, and Mr. Muse was not a witness at trial. The Court limited Mr. Samoylenko's testimony to the facts addressed in his declaration and concluded that State Farm could challenge any alleged infirmities in his testimony on cross-examination. *Id.* at 25–27.

During his testimony, Mr. Samoylenko testified as follows:

> ***Q****: Okay. And this felony forgery that you found in the criminal database, isn't it true that that was from the year 2000?*
>
> ***A****: Yeah.*
>
> ***Q****: Okay.*
>
> ***A****: I mean, there's other charges, if you want me to list them, but I don't think that they were relevant.*

Dkt. No. 195 at 40. State Farm objected and moved to strike, and the Court struck the testimony because it was outside the declaration and therefore irrelevant. *Id.*

Taken independently or in totality, these statements are wholly insufficient to create the "flavor of misconduct" that "sufficiently permeate[s] an entire proceeding" and thus, justify a new trial. Here, where appropriate, the Court granted several of State Farm's motions to strike testimony about John Muse's background, which State Farm acknowledged during trial and in its motion. *See, e.g.*, Dkt. No. 195 at 15. Moreover, in its preliminary instructions, the Court

1   instructed the jury that stricken or excluded testimony "is not evidence and must not be
2   considered." Dkt. No. 138 at 9.

3       State Farm argues the trial was tainted by the prejudicial effect of these statements despite
4   the Court's instructions. But "[w]hen the district court gives curative instructions there is a strong
5   presumption that the jury follows those instructions … and the danger of prejudice from improper
6   questions is cured by an immediate objection and curative instructions." *McMillan v. Weathersby*,
7   31 F. App'x 371, 374 (9th Cir. 2002). Despite State Farm's contentions, the Court's curative
8   instructions were sufficient to cure any potential prejudice. *See Bah. Surgery Ctr., LLC v.*
9   *Kimberly-Clark Corp.*, No. CV 14-8390 DMG (PLAx), 2018 U.S. Dist. LEXIS 139931, at *62
10  (C.D. Cal. Mar. 30, 2018) (citing *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270 (9th
11  Cir. 2000)); *Marroquin v. Unidentified LAPD Officer*, No. 2:21-CV-07607-RGK-JEM, 2023 WL
12  5505061, at *2 (C.D. Cal. Apr. 24, 2023) (denying motion for new trial where "Defendant's
13  counsel made three isolated remarks, all of which were immediately objected to" and after which
14  the Court gave curative instructions); *PetConnect Rescue, Inc. v. Salinas*, No. 20-CV-527-RSH-
15  DEB, 2024 WL 3640485, at *5 (S.D. Cal. Aug. 2, 2024) (finding a new trial unwarranted where
16  the court offered to provide curative instructions).

17      Additionally, as to allusions O'Neal's counsel made to John Muse's criminality during
18  opening and closing arguments, courts typically are "less inclined to find the statements pervaded
19  the trial and thus prejudiced the jury." *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 519 (9th
20  Cir. 2004) (cleaned up). Moreover, in both its preliminary and final jury instructions, the Court
21  reminded the jury that statements made by lawyers are not evidence. Dkt. No. 138 at 9 ("What
22  they may say in their opening statements, closing arguments and at other times is intended to help
23  you interpret the evidence, but it is not evidence."), Dkt. No. 153 at 10. Regardless, O'Neal's
24  counsel's statements were not so inflammatory as to justify a new trial.

Notably, State Farm did not, as the Court suggested, provide a proposed limiting instruction on this issue. Instead, State Farm opted to move for a mistrial during the proceedings, and after the conclusion of trial. While this is procedurally permissible, it factors into the totality of circumstances the Court considers when adjudicating a post-trial motion for a new trial. *See Inland Empire Waterkeeper*, 2024 WL 4492293, at *7; *Maki v. N. Sky Partners II LP*, No. CV-15-02625-PHX-SRB, 2018 WL 4042451, at *1 (D. Ariz. Apr. 23, 2018) ("Though Defendants did unsuccessfully move for a mistrial, no other objections or requests for curative instructions were made."). And lastly, the Court considers the jury's award, which was not notably excessive as to indicate that the jury panel was motivated by passion. *Maki*, 2018 WL 4042451, at *1; *Langley*, 854 F. App'x at 152.

In short, the Court is unconvinced that the statements about John Muse's purported criminality impermissibly swayed the jury and caused an unfair verdict. The Court denies State Farm's motion for a new trial based on attorney misconduct.

2.  The Seventh Amendment requires submitting the issue of enhanced damages under IFCA to the jury.

State Farm argues that IFCA does not trigger the Seventh Amendment right to a jury trial and as such, the issue of enhanced damages should have been decided by the Court. Dkt. No. 171 at 11. Tellingly, its only legal authority on this point comes from courts outside the Ninth Circuit. *See id.* at 11–12. State Farm claims that it "is mindful of this Court's prior rulings regarding application of the Seventh Amendment (right to a jury trial)" and yet, fails to address the explicit Ninth Circuit authority on this issue.

In *MKB Constructors v. American Zurich Insurance Company*,[4] the Ninth Circuit addressed this issue, affirming the district court's decision to send the question of enhanced damages to the jury. 711 F. App'x at 838. The Circuit found that IFCA cases are "effectively a tort action for damages caused by an unreasonable breach of an insurance contract" which are "squarely a case at law, rather than in equity or admiralty." *Id.* "[A] jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law." *Id.* (quoting *Curtis v. Loether*, 415 U.S. 189, 195 (1974)). Therefore, "the Seventh Amendment require[s] submitting the question of enhanced damages to the jury." *Id.*

The Court also finds persuasive authority from other courts in this district, which have likewise ruled that the jury decides the issue of enhanced damages in IFCA actions. *See, e.g.*, *Gochev v. First Am. Prop. & Cas. Ins. Co.*, No. C22-159-MLP, 2024 WL 216531 (W.D. Wash. Jan. 19, 2024); *IDS Prop.*, 2017 WL 2600186, at *8; *F.C. Bloxom Co. v. Fireman's Fund Ins. Co.*, No. C10-1603RAJ, 2012 U.S. Dist. LEXIS 170543, at *10–11 (W.D. Wash. Nov. 30, 2012); *Nw. Mut. Life Ins. Co. v. Koch*, 771 F. Supp. 2d 1253, 1256–57 (W.D. Wash. 2009). No court in the Western District of Washington has concluded that the Seventh Amendment does not apply to enhanced damages under IFCA. *See Tavakoli v. Allstate Prop. & Cas. Ins. Co.*, No. C11-1587-RAJ, 2013 WL 153905, at *2–3 (W.D. Wash. Jan. 15, 2013) (reserving on the issue).

As such, in light of this authority, the jury's consideration of enhanced damages does not provide adequate grounds for a new trial.

---

[4] The Court recognizes that *MKB Constructors* is an unpublished case. Per Federal Rule of Appellate Procedure 32.1(a), unpublished decisions issued after January 1, 2007 may be properly cited, and courts in this Circuit may consider or refer to unpublished dispositions issued at any point in time. Fed. R. App. P. 32.1.

1

3.  <u>The jury's verdict does not go against the weight of the evidence.</u>

2

Lastly, State Farm argues that "the jury's verdict is not supported by the evidence and

3

instead relies on guesswork and speculation because O'Neal presented zero evidence that her

4

property was taken by 'theft with criminal intent.'" Dkt. No. 171 at 12–13. The Court disagrees.

5

The standard applicable to a Rule 59(a) motion is "stringent," and the moving party bears

6

a heavy burden. *Venegas v. Wagner*, 831 F.2d 1514, 1519 (9th Cir. 1987). When the movant

7

seeks a new trial on the basis "that the verdict is against the weight of the evidence," the Court

8

considers whether, "having given full respect to the jury's findings, the [Court] … is left with the

9

definite and firm conviction that a mistake has been committed[.]" *Landes Constr. Co. v. Royal*

10

*Bank of Canada*, 833 F.2d 1365, 1372 (9th Cir. 1987) (quoting 11 C. Wright & A. Miller, Federal

11

Practice and Procedure § 2806, at 48–49 (1973)). "Doubts about the correctness of the verdict are

12

not sufficient grounds for a new trial[.]" *Id.*

13

Again, as detailed in the discussion of State Farm's Rule 50(b) motion, the Court finds

14

ample evidence supporting the jury's conclusion that State Farm unreasonably denied O'Neal's

15

claim. The jury reasonably credited O'Neal's witnesses instead of State Farm's, and the Court

16

cannot say with assurance that they were wrong to do so. *Landes*, 833 F.2d at 1372 ("The judge

17

concluded that it was not unreasonable for the jury to believe LCCO's witnesses instead of

18

RBOC's.").

19

Accordingly, the Court denies State Farm's motion for a new trial.

20

21

22

23

24

ORDER ON DEFENDANT'S POST-TRIAL MOTIONS - 20

## IV.  CONCLUSION

For the foregoing reasons, the Court STRIKES the Declaration of Dubs Herschlip (Dkt. No. 181).  The Court DENIES State Farm's motion for judgment as a matter of law (Dkt. No. 169) and for a new trial (Dkt No. 171).    The Court DIRECTS the Clerk to enter judgment *nunc pro tunc*.

Dated this 10th day of April, 2025.

Kymberly K. Evanson
United States District Judge