UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBRA S. O'NEAL,<br><br>                Plaintiff,<br><br>    v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>                Defendant. | CASE NO. C23-0232-KKE<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES |

After a jury verdict in her favor for $107,087.22, Plaintiff Debra O'Neal moved for an award of $554,611.50 in attorney's fees for the work her counsel performed from August 3, 2020 through January 9, 2025. Dkt. No. 160. The Court finds Plaintiff is entitled to her reasonable attorney's fees but finds the amount requested is not reasonable. Accordingly, the Court grants in part and denies in part the motion and awards $269,613.75 in attorney's fees to Plaintiff. *Id.*

## I. RELEVANT BACKGROUND

In January 2023, Plaintiff began this action against State Farm in state court for violating the Washington Insurance Fair Conduct Act ("IFCA") and breach of contract. Dkt. No. 1-1. On February 16, 2023, State Farm removed the case to this Court. Dkt. No. 1. Between the case filing and the beginning of trial, the Court resolved several contested motions, though most related to scheduling and procedural issues.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES - 1

After a five-day trial that began on October 28, 2024, the jury found that State Farm violated IFCA and awarded Plaintiff $107,087.22. Dkt. No. 158 at 3. The jury found that Plaintiff incurred actual damages totaling $107,087.22, applied a 50% mitigation reduction (adjusted actual damages $53,543.61), and found that Plaintiff was entitled to enhanced damages of $53,543.61 under IFCA. *Id.*

Plaintiff then moved for $554,611.50 in attorney's fees under Washington Revised Code 48.30.015. Dkt. No. 160. After State Farm responded (Dkt. No. 173) and Plaintiff replied (Dkt. No. 176), the Court found the submissions "insufficiently detailed" and ordered Plaintiff to provide the attorney's fees spreadsheet submitted in support of her motion in native format to the Court, and to file "all engagement and/or fee agreements" between counsel and Plaintiff, invoices billed to Plaintiff, and documents "reflecting amounts O'Neal has paid on said invoices, if any." Dkt. No. 189 at 1–2.

In response, Plaintiff filed two fee agreements. The first fee agreement, dated August 3, 2020, set Plaintiff's counsel's rates as follows:

> HOURLY FEES: Services rendered by Attorney will be billed at **$350** per hour. As a current LegalZoom customer, Client will be billed at **$262.50**. Should someone other than a licensed attorney work on Client's matter, services rendered by that person will be billed at **$150** an hour. As a current LegalZoom customer, Client will be billed at **$112.50**.

Dkt. No. 190 at 14 (emphasis in original). In the second fee agreement, dated April 25, 2023, Plaintiff agreed to a 33% contingency fee arrangement. *Id.* at 9. Plaintiff also submitted a 117-page PDF of invoices sent to Plaintiff, an Excel spreadsheet showing billing entries, an Excel spreadsheet showing Plaintiff's payments, and six images of receipts for payment.[1] *Id.* at 6. The

---

[1] These records were submitted to the Court and counsel for State Farm via email. Plaintiff is directed to file the PDF and images on the docket.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES - 2

parties filed supplemental briefing on the import of the new submissions (Dkt. Nos. 190, 199, 201) and the matter is now ripe for the Court's consideration.

## II.  ANALYSIS

The parties do not dispute that Plaintiff is entitled to her "reasonable attorney's fees and costs" under IFCA and *Olympic Steamship* case law. WASH. REV. CODE § 48.30.15(3); *Olympic S.S. Co. v. Centennial Ins. Co.*, 811 P.2d 673, 680–82 (Wash. 1991) ("An insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees."). Rather, it is the amount of Plaintiff's fee request that State Farm contests.

**A.   The Court Applies the Lodestar Analysis to Determine Plaintiff's Reasonable Attorney's Fees.**

Courts sitting in diversity apply state law to determine reasonable attorney's fees. *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009); *MKB Constructors v. Am. Zurich Ins. Co.*, 83 F. Supp. 3d 1078, 1085 (W.D. Wash. 2015) (applying Washington law to a claim for attorney's fees under IFCA). When a fee-shifting statute is silent on how reasonable attorney fees should be calculated, Washington courts generally apply the lodestar method. *See Brand v. Dep't of Lab. & Indus.*, 989 P.2d 1111, 1114 (Wash. 1999). The lodestar method involves two steps: first, computing a lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter; and second, adjusting the lodestar figure either up or down to reflect factors that have not already been considered, namely the contingent nature of success and the quality of the work performed. *See id.*; *see also MKB Constructors*, 83 F. Supp. 3d at 1085. "The Court is not bound by the lodestar value, but rather, is charged with making 'an independent decision' as to what represents a reasonable amount of attorney fees." *IDS Prop. & Cas. Ins. Co. v. Fellows*, No. C15-2031 TSZ, 2017 WL 4122565, at *2 (W.D. Wash. Sept. 15, 2017) (quoting *Nordstrom, Inc. v. Tampourlos*, 733 P.2d 208, 212 (Wash. 1987)). The

fee applicant bears the burden of proving the reasonableness of the amount requested. *Scott Fetzer Co. v. Weeks*, 859 P.2d 1210, 1216 (Wash. 1993).

State Farm argues the Court should not apply the lodestar analysis and should enforce the contingency fee agreement. Dkt. No. 199 at 3–5. State Farm calculates that Plaintiff's counsel should receive one third of the gross amount recovered, totaling $53,543.61, which should then be halved based on the jury's finding of Plaintiff's failure to mitigate her damages leading to a total award of $26,771.80. *Id.* at 5. State Farm's argument is contrary to Washington law which rejects applying a contingency fee agreement in lieu of the lodestar analysis in IFCA cases. *See MKB Constructors*, 83 F. Supp. 3d at 1085 ("[T]he court agrees with American Zurich that MKB's request for an award of attorney's fees by increasing the overall judgment by 33% is without support under Washington law."); *Berryman v. Metcalf*, 312 P.3d 745, 757 (Wash. 2013) (only considering contingency arrangement after completing the first step of the lodestar analysis). Accordingly, the Court will apply the lodestar two-step analysis to determine the "reasonable attorney's fees" owed to Plaintiff.

B.  **Plaintiff's Attorney's Fees Incurred Before 2023 Are Not Recoverable.**

Plaintiff seeks to recover attorney's fees from August 3, 2020 to July 7, 2022. *See* Dkt. No. 160 at 8 (citing Dkt. No. 161 at 70–77 (Plaintiff's "Cost Bill" in the King County case against the storage facility and owner including billing entries for August 3, 2020 to July 7, 2022)). But Plaintiff already sought those fees from the King County court in a separate, but related, lawsuit against the storage facility. Dkt. No. 161 at 70–77. The King County court considered this request for fees and issued an award. *See* Dkt. No. 173 at 4 (State Farm asserts the court awarded $200), Dkt. No. 202 at 2 (Plaintiff's counsel asserts the court awarded $15,801.86). Regardless of the inconsistency between the parties on the ultimate outcome, it is undisputed that the King County court was provided a fee request for at least $10,215 comprising fees from August 3, 2020 to July

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES - 4

7, 2022 (Dkt. No. 161 at 70–77) and granted some amount of fees. As shown by Plaintiff's reliance on the bill of costs filed in the King County case to support her request for fees here, Plaintiff is attempting to recover attorney's fees that have already been awarded by a different court. Plaintiff does not explain why this Court should consider these fees again. Because Plaintiff has already obtained relief from a court regarding the fees incurred from August 3, 2020, to July 7, 2022, the Court will not analyze those fees again.

Plaintiff also provides billing entries for work done between July 14, 2022 and August 17, 2022. Dkt. No. 161 at 20–21. But Plaintiff states that "counsel has removed charges for work performed (between obtaining a judgment against John Muse, and the Defendant's removal of this case to federal court) to anticipate and overcome Defendant's objections that work performed during that time was ineffectual and unnecessary." Dkt. No. 160 at 8. The Court will rely on Plaintiff's representation that such fees should be excluded and will therefore not analyze or award the fees incurred in this period.

C.    **Plaintiff's Counsels' Rates Are Not Reasonable.**

In determining reasonable hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003). The relevant community is the forum in which the district court sits. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiff argues that lead counsel Dubs Herschlip's 2023 rate of $500 and 2024 rate of $550 are reasonable. Dkt. No. 161 ¶ 18. Plaintiff supports this argument with Mr. Herschlip's declaration that describes his experience (Dkt. No. 161 ¶¶ 2–10) and the declaration of Noah Davis,

an insurance litigation attorney familiar with Seattle rates, who attests that "Mr. Herschlip's 24 years' experience as an attorney, and his past trial experience warrants a $500/hr rate" (Dkt. No. 162 ¶ 18). But Mr. Davis did not review the 2020 agreement wherein Plaintiff agreed to a rate of $262.50 for Mr. Herschlip. Dkt. No. 162 ¶ 15 (listing materials and information Mr. Davis considered). And while the invoices sent to Plaintiff show Mr. Herschlip billed the $500 and $550 rates, those rates were not actually charged to Plaintiff because she had moved to a contingency fee arrangement by that time. *See* Dkt. No. 190 at 9. Finally, while Mr. Herschlip's declaration discusses handling insurance related matters for many years (Dkt. No. 161 at 1–4), he informed the Court during the pretrial conference that this was his first trial in federal court. Dkt. No. 191 at 2.

In determining a reasonable rate, the Court considers all of this evidence, giving significant weight to the rates agreed to by Plaintiff. *See Langley v. Geico Gen. Ins. Co.*, No. 1:14-CV-3069-SMJ, 2017 WL 1682584, at *2 (E.D. Wash. Apr. 5, 2017) ("Nevertheless, Langley has not provided sufficient justification to increase Mr. Trujillo's fee award beyond the $350 per hour stated in the fee agreement in this case."). The Court finds Mr. Herschlip's claimed hourly rates are not reasonable and that based on the fee agreement from 2020, prior representations to other courts (Dkt. No. 161 at 70), and reasonable annual increases, the reasonable hourly fee for Mr. Herschlip in 2023 is $400 and for 2024 is $450.

Plaintiff seeks to apply rates of $295 for 2023 and $395 for 2024 for his associate, Rafael Bultz. Dkt. No. 161 ¶ 18. Though Mr. Bultz is a 2023 law school graduate, Plaintiff claims he has "four years of legal experience" that predates his bar passage. *Id.* ¶ 11. Plaintiff adds that Mr. Bultz's "actual hourly rate for 2023 was $395[.]" *Id.* ¶ 29. In support of these rates, Mr. Davis also relies on Mr. Bultz's pre-licensure work, including non-lawyer work. Dkt. No. 162 ¶ 19. Plaintiff cites no authority suggesting that a Court should consider pre-law school graduation work

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES - 6

in analyzing hourly rates. Nor does the Court agree that Mr. Bultz's pre-law school work experience equates to post-law school experience for purposes of a reasonable rate calculation. Rather, at the time of trial, Mr. Bultz had been a licensed attorney for one year. Based on Mr. Bultz's one year of licensed legal experience, and Plaintiff's 2020 agreement to pay a 20-year lawyer $262.50 per hour, the Court finds a reasonable hourly rate for Mr. Bultz is $225 for 2023 and $250 for 2024.

Like Mr. Bultz, Plaintiff seeks the same rates of $295 and $395 for 2023-graduate Alexander Rowan. Relying on pre-graduation work, Plaintiff claims Mr. Rowan has "three years of legal experience." Dkt. No. 161 ¶ 12. Again, Plaintiff seeks to credit legal experience that pre-dates bar passage and to ignore the rates agreed to by Plaintiff. The Court declines to do so. For the same reasons the Court adjusted Mr. Bultz's rate, the Court finds Mr. Rowan's reasonable rate for 2023 is $225 and $250 for 2024.

Paralegal William Adan's billable rate of $195 is not reasonable. Dkt. No. 161 ¶ 18. The only evidence in the record relevant to Mr. Adan's rate is the 2020 agreement wherein Plaintiff agreed to pay $112.50 per hour for work performed by "someone other than a licensed attorney" (Dkt. No. 190 at 14) and the 2022 representation by Mr. Herschlip in the King County case that a paralegal with eight years of experience at the same firm billed at a $150 rate (Dkt. No. 161 at 70). Mr. Davis also declared generally that litigation staff rates of $125 are below-market. Dkt. No. 162 ¶ 21. Based on the evidence provided, the Court finds a rate of $150 is reasonable for Mr. Adan.

Plaintiff also seeks to recover for 24 minutes billed by "former associate" Sara Kahan in 2023, 30 minutes billed by paralegal Ralph Jenkins in 2023, and 3.3 hours billed by attorney Tracy Pearson in 2024. Dkt. No. 161 ¶¶ 18, 27, 33, 34. Plaintiff does not provide enough information about these individuals to determine their role on this case or relevant experience to support their

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES - 7

billed rates. Accordingly, the Court will not consider these time entries or analyze their rates. *See Fetzer*, 859 P.2d at 1216 (applicant's burden to establish reasonable attorney's fees).

Based on the consolidated information available in Mr. Herschlip's declaration (Dkt. No. 161 ¶¶ 27–34, 38), the Court's rate adjustments impact the total attorney's fees as follows:

| Individual | 2023 Rate | 2023 Hours | 2024 Rate | 2024 Hours[2] | Total Fees |
|---|---|---|---|---|---|
| Herschlip | $400 | 38.8 | $450 | 242.5 | $124,645 |
| Bultz | $225 | 108.2 | $250 | 633.6 | $182,745 |
| Rowan | $225 | 4.3 | $250 | 236.6 | $60,117.50 |
| Adan | $150 | 117.7 (Same rate for 2023/2024) | | | $17,655 |
| **TOTAL** | | | | | **$385,162.50** |

**D.    The Amount of Time Billed Is Not Reasonable.**

In determining whether the hours expended by counsel were reasonable, the Court must independently determine whether the Plaintiff sustained its burden to demonstrate the hours expended were reasonable. *MKB Constructors*, 83 F. Supp. 3d at 1087; *see also SentinelC3, Inc. v. Hunt*, 331 P.3d 40, 48 (Wash. 2014) ("In determining an award of attorney's fees, the trial court may not rely solely on counsel's fee affidavit."). The Court must exclude from Plaintiff's award "hours that are excessive, redundant, or unnecessary[.]" *Black Lives Matter Seattle-King Cnty. v. City of Seattle*, 516 F. Supp. 3d 1202, 1214 (W.D. Wash. 2021) (citing *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013)). The Court has discretion to make reductions, "no greater than 10 percent," without providing "specific explanation," but must explain larger reductions. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The Court

---

[2] The number of hours billed for 2024 combines the hours identified in Mr. Herschlip's declaration for amounts billed in 2024 through November 4, 2024 (Dkt. No. 161 ¶¶ 28–32) and the amount billed from November 4, 2024 to November 18, 2024 (*id.* ¶ 38).

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES - 8

finds the amount billed by Plaintiff's counsel is facially unreasonable, not supported by the record, and reflects excessive billing.

First, the overall number of hours expended on the case is excessive. In general this case was not particularly complex. Plaintiff's counsel took no depositions and filed no discovery motions, and the dispositive motion briefing was limited. In light of the straightforward nature of the single claim, it is not reasonable that one attorney, Mr. Bultz, would spend the equivalent of three and a half months out of 2024 (633.6 hours) exclusively working on this case when only one cause of action remained after March 2024, particularly when another associate (Mr. Rowan) was also spending significant time on the matter. *See* Dkt. No. 161 ¶¶ 29, 38. The billing records also reflect frequent doubling up of work by both junior lawyers, with Mr. Bultz and Mr. Rowan both attending depositions and preparing witnesses together. For example, the two of them spent 36.4 hours to prepare for and defend the deposition of Plaintiff's expert, not including time spent on other aspects of preparing his report. Dkt. No. 161 at 43–44.

The high number of hours billed might be appropriate if they accounted for a level of zealous advocacy that was not seen in Plaintiff's approach to these proceedings. Rather, Mr. Herschlip represented to the Court several times throughout pretrial, trial, and even now in post-trial proceedings that certain basic steps to prosecute this case were not taken because of Plaintiff's limited funds. *See, e.g.*, Dkt. No. 90 at 9–10, Dkt. No. 191 at 12 ("We didn't bring a motion to compel because the client has limited resources."), 17 ("My client does not have any money to depose people."), 66 (explaining the decision to not order deposition transcripts because "my client doesn't have the resources"); Dkt. No. 181 at 2 ("[I]t should be noted that Plaintiff did not have access to the daily trial transcripts as the cost to obtain them was much more than Plaintiff was able to afford."). But counsel's billing entries do not reflect the scrimping and saving he claimed was required by Plaintiff's inability to pay. When Plaintiff's counsel repeatedly cited his client's

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES - 9

lack of resources as an excuse for his failures to thoroughly litigate her case,[3] the same lawyer cannot recover for hours commensurate with a robust prosecution.

The extensive billing here is also not reasonable because when Plaintiff did prosecute her case, her attorneys failed to follow local rules and court procedures, resulting in wasted time by the Court and the parties. *See* Dkt. No. 76 (striking Plaintiff's motion to compel discovery for failing to follow court procedures), Dkt. No. 90 (Plaintiff's motion to compel mediation seeking attorney's fees under Rule 11 without meeting and conferring or providing notice); Dkt. Nos. 169, 171 (untimely responses to post-trial motions); Dkt. No. 204 at 8 (striking improper declaration). The jury also determined that Plaintiff failed to mitigate her actual damages and imposed a 50% reduction in her damages as a result. Dkt. No. 158 at 3. Throughout closing arguments Mr. Herschlip argued that any failure to mitigate was due to "her attorneys" doing a "sloppy job." Dkt. No. 196 at 109, 118, 121. Mr. Herschlip's concession that his work on the case was at times subpar reinforces finding the overall number of hours billed excessive.

Second, though Plaintiff's counsel represented that duplicative and inefficient billing entries had been removed (Dkt. No. 160 at 8), the corroborating evidence suggests otherwise. For example, in the 2023 and 2024 billing records attached to Mr. Herschlip's first declaration (Dkt. No. 161 at 23–61), entries that included a "[N.C.]" notation (meaning that entry would not be charged) regularly *were* included in the column for "total." *See, e.g.*, Dkt. No. 161 at 23 (19 entries marked as "[N.C.]" that total over $2,000). The Court cannot confirm whether these entries were properly excluded from Mr. Herschlip's summary of hours spent (Dkt. No. 161 ¶¶ 27, 38) because the native spreadsheet provided to the Court fails to identify what hours were billed versus not

---

[3] Nor does the Court accept the proposition that a client's limited means relieves counsel from the duty of diligence, particularly where the attorney has accepted the case on a contingent fee basis, as Mr. Herschlip did here. WASH. RULES OF PRO. CONDUCT R. 1.1–1.4 (2025).

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES - 10

billed.[4]  Rather, all hours on the spreadsheet are noted as "non-billable," which is obviously not the case.

Moreover, even if each entry with an N.C. notation were excluded from the total amount requested, many other billing entries without the N.C. designation are consistent with the type of work for which Plaintiff's counsel previously elected not to charge.  *See Hensley v. Eckert*, 461 U.S. 424, 434 (1983) ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (emphasis in original).  For example, the billing records are inconsistent as to when counsel billed for multiple attorneys attending meetings and responding to emails and when they did not.  *Compare* Dkt. No. 161 at 22 (not charging for multiple attorneys in a meeting and responding to emails), *with id.* at 27 (charging for multiple attorneys in meetings and responding to email); *see also Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 982 (S.D. Cal. 2014) (collecting cases that discount extensive internal meetings and correspondence).

Further, the records contain numerous entries reflecting attorneys billing for clerical tasks.  *See, e.g.*, Dkt. No. 161 at 39 (attorney traveling to and from post office), 38–39 (attorney billing 12.7 hours to review an expert's report for "grammatical errors"), 40 (attorney billing over 10 hours for redacting financial records), 31–33 (8.8 hours of attorney time reviewing Plaintiff's deposition transcript to make corrections).  Finally, there are several apparent clerical errors in the billing entries themselves.  *See, e.g.*, *id.* at 32 (duplicated entries), 45 (blank entries), 56 (duplicated entries).  The deficiencies identified above impair the Court's ability to evaluate in detail the

---

[4] State Farm pointed out this discrepancy in their supplemental opposition, but Plaintiff failed to correct or even acknowledge this error. Dkt. No. 199 at 6 ("[T]he 'Billing Entries' spreadsheet provided by counsel lists all hours as non-billable.").

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES - 11

reasonableness of much of Plaintiff's fee request, or even to confirm which time entries are in fact reflected in Plaintiff's total fee demand.

Based on the facially excessive billing, full history of this case, and the Court's inability to perform a more specific analysis because of the inconsistent and incomplete records, the Court finds it necessary to impose a 30% reduction of the total fee amount under the adjusted rates. *See Gonzalez*, 729 F.3d at 1203; *Moreno*, 534 F.3d at 1112; *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992). Accordingly, the lodestar amount is $269,613.75.

The Court does not find a downward adjustment necessary because all the relevant considerations were analyzed under the first step of the lodestar analysis. *See Nwauzor v. GEO Grp., Inc.*, No. 3:17-CV-05769-RJB, 2021 WL 5907797, at *3 (W.D. Wash. Dec. 14, 2021) (citing *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 204 (Wash. 1983)).

Plaintiff is entitled to an award of attorney's fees totaling: $269,613.75.

### III. CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for attorney's fees. Dkt. No. 160.

Defendant must pay Plaintiff's counsel $269,613.75 by May 9, 2025.

Plaintiff shall also file the 117-page PDF of invoices and six images of receipts for payment that were provided to the Court and counsel by email by April 16, 2025.

Dated this 11th day of April, 2025.

*Kymberly K. Evanson*
Kymberly K. Evanson
United States District Judge